UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GORDON BLAKE,

    Petitioner,

v.

ROSEMARY NDOH,

    Respondent.

Case No. 3:19-cv-06227-WHO

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 29

Petitioner Gordon Blake was convicted in state court on several dozen counts of lewd acts and forceable lewd acts involving substantial sexual conduct against four minors. He seeks a writ of habeas corpus because, he argues, his appellate counsel was constitutionally ineffective by failing to raise an argument about several of the counts and he was denied procedural due process on several others. The petition is denied. Blake's right to effective counsel was not violated because the argument that he says should have been made is legally incorrect. And he has not shown that he was deprived of procedural due process under clearly established federal law.

## BACKGROUND

Both parties rely on the underlying facts as the California Court of Appeal described them. *See* Memorandum in Support of First Amended Application for Writ of Habeas Corpus ("Pet.") [Dkt. No. 29-1] 10; Memorandum in Support of Answer ("Oppo.") [Dkt. No. 32-1] 1; *see also People v. Blake*, No. A142578, 2018 WL 1478242 (Cal. Ct. App. Mar. 27, 2018) ("*COA Op.*").

**I.   ALLEGATIONS AND TRIAL TESTIMONY**

In 2014, the Contra Costa District Attorney charged Blake with 34 counts. *See COA Op.*, 2018 WL 1478242, at *1. Those counts were for lewd acts or forceable lewd acts with four minors in the 1990s. *Id.* All alleged that they met the requirements of "substantial sexual

conduct" under California Penal Code §§ 803(f)(2), 1203.066(b). I do not recite the full details here except to the extent they are relevant to resolving this petition; the Court of Appeal recounted the allegations and testimony at trial at length and in detail.

Counts 1 through 6 were for acts against John Doe 1: counts 1 through 5 were for lewd acts and count 6 was for a forcible lewd act in violation of California Penal Code § 288(a), (b)(1). *See id.* The acts took place between January 1, 1990 to December 31, 1992. *Id.* After Blake met Doe 1's mother in a singles' Bible study group, he began spending time with Doe 1. *Id.*, at *2. According to Doe 1's testimony at trial, Blake molested him when he was 11 or 12. *See id.* Among other things, Blake touched Doe 1's genitals five to 10 times, touched him on the low back, and masturbated with Doe 1's hand against him while the two shared a backyard air mattress. *Id.*

Count 7 was for a lewd act against John Doe 2 in violation of California Penal Code § 288 that took place in the same timeframe. *Id.*, at *1–*2. Doe 2 was Doe 1's stepbrother. *Id.* When he was 10, 11, or 12, Blake stroked his penis while he was ostensibly asleep in his bed and stopped when Doe 2 cleared his throat. *Id.*, at *3.

Counts 8 through 33 were for acts against John Doe 3: counts 8 through 27 were for forcible lewd acts against a child under age 14 and counts 28 through 33 were for lewd acts against a child aged 14 or 15 in violation of California Penal Code § 288(b)(1), (c)(1). *Id.*, at *1. They took place between January 1, 1992 and November 5, 1997. *Id.* In brief, Doe 3 testified that, from when he was 11 until when he was 16, Blake molested him between 49 and 79 times by either masturbating Doe 3, having Doe 3 masturbate Blake, orally copulating Doe 3, having Doe 3 orally copulate him, or anally penetrating Doe 3. *Id.*, at *3. Doe 3 testified that he was often left in Blake's care, including sometimes over night; Blake would frequently carry him over his shoulder to his garage, which Doe 3 would often try to resist, to molest him. *Id.* Once Doe 3 was an adult, he resumed some contact with Blake, including threatening to go to the authorities if Blake did not pay him and doing some work on Blake's house. *Id.*, at *4–*5. Eventually, he reported Blake's conduct and wore a wire when confronting Blake. *Id.*, at *5–*6. The details, again, are not directly relevant to this petition, but Blake admitted to at least some of the

molestation on the recording, *see id.*, at *5–*8; he later testified at trial that he did so because he was afraid of Doe 3 and was trying to mitigate or manage the situation, *id.*, at *9.  At trial, Doe 3 admitted that he lied to the police about one sexual encounter between him, Blake, and another boy.  *Id.*, at *5.  He was also impeached by six felony convictions for theft.  *Id.*

Count 34 was for a lewd act against John Doe 4 between January 1, 1996 and December 31, 1999, when Doe 4 was between ages nine and 11.  *Id.*, at *1, *8.  Doe 4 testified that Blake touched his genitals and bottom "at least 20 or 25 times" when "fake wrest[ling]" with him.  *Id.*, at *8.

Blake's behavior came to authorities' attention when Doe 3 was incarcerated for identity theft and forgery in 2012.  *Id.*, at *5.  While there, Doe 3 wrote notes to the district attorney and police about Blake's actions.  *Id.*  The taped conversation referenced above occurred after that.  Doe 1 came to authorities' attention when he and his mother in 2013 were looking at old photographs and saw one of Blake.  *Id.*, at *2.  Doe 1 said he "hope[d] that sonofabitch rots in hell," and when his mother asked why, they discussed the events for an hour.  *Id.*  In 2014, a friend told Doe 1's mother that Blake had been arrested for child molestation (after the interactions with Doe 3), and she contacted the detective on his case about Doe 1.  *Id.*  About four years before trial, Doe 1 and Doe 2 were fishing when Doe 2 asked Doe 1 about whether Blake had done anything inappropriate to him.  *Id.*  Doe 2 spoke to the police about it several months before trial.  *Id.*, at *3.  The police contacted Doe 4 about Blake.  *Id.*, at *8.

Blake testified in his own defense.  *Id.*  He denied engaging in any sexual behavior with any of the minors.  *Id.*  He testified that he came back into contact with Doe 3 as an adult solely so that he could perform housework.  *Id.*  He stated that Doe 3 said he would report the alleged molestation of Doe 4 to the authorities unless Blake paid him off.  *Id.*, at *9.  He reported Doe 3 as a burglary suspect.  *Id.*  As noted, he testified that he admitted to some of the conduct on tape only due to fear of Doe 3 and "manag[ing]" the situation.  *Id.*

## II. VERDICT AND SENTENCE

The jury found Blake guilty as charged on most counts.  *Id.*, at *1.  It acquitted him of counts 18 and 19.  *Id.*  It acquitted him of forcible lewd acts on counts 23 through 27 but convicted

3

1   him of the lesser included offense of lewd acts on those counts. *Id.* On all guilty counts, the jury

2   found that Blake committed "substantial sexual conduct." *Id.* It also found true the allegation that

3   he committed child molestation against more than one victim in violation of Penal Code § 667.61

4   for counts 23 through 27 and count 34. *Id.* The trial judge sentenced Blake to 194 years to life in

5   prison. *Id.*

**III.   APPEAL**

The California Court of Appeal affirmed. Blake raised numerous challenges to the process and result. Two are the challenges he brings here. First, Blake's reply brief argued that it "violated ex post facto principles" to apply a broadened definition of masturbation to his crimes because that broadening happened in 2005. *See id.*, at *16 n.11. In a footnote, the Court of Appeal declined to address the issue because it was not raised in the opening brief. *Id.* Second, Blake challenged whether the criminal information, pretrial hearing, and trial provided constitutionally adequate notice of the alleged crimes on some of the counts—though not all he raises here; he raised the others for the first time in his petition to the California Supreme Court. *Id.*, at *19. The Court of Appeal rejected that argument and held that the proceedings did not violate Blake's due process rights. *Id.* Its reasoning is explained more fully below. In brief, it rejected Blake's contention that the pleadings contained insufficient detail about when specific acts occurred and against whom. *Id.* It also held that Blake could not challenge evidentiary errors in the preliminary hearing (to determine the sufficiency of the pleadings) because he did not challenge them at the time. *Id.* And it held that the evidence at trial was sufficient to support the verdict. *Id.*

Another aspect of the Court of Appeal's decision is relevant, though Blake does not *directly* challenge it here. That court rejected Blake's argument that his conduct did not satisfy the statutory definition of "substantial sexual activity . . . excluding masturbation that is not mutual," which triggers an increased statute of limitations. 1996 Cal. Stats. ch. 130, § 1 (originally codified at Cal. Penal Code Ann. § 803(g)(3)(A) (West Supp. 2003)). Blake argued that,

> the statute of limitations was not satisfied here because the acts alleged as masturbation with respect to Does 1, 2, and 4 do not rise to the level of substantial sexual conduct. According to defendant, the Legislature intended that "masturbation" be treated as

"substantial sexual conduct" only if it involves skin-to-skin contact and meets the definition of masturbation as "erotic stimulation especially of one's own genital organs commonly resulting in orgasm and achieved by manual or other bodily contact exclusive of sexual intercourse, by instrumental manipulation, occasionally by sexual fantasies, or by various combinations of these agencies."

COA Op., at *11. In a lengthy analysis, the Court of Appeal explained that "decades" of precedent stood against Blake's argument. *Id.* It explained that "numerous" Court of Appeal opinions over the course of years (since at least 1992) had defined "substantial sexual contact" as "any touching or contact, however slight, of the genitals of the victim or the offender done with the intent to arouse the sexual desires of the victim or the offender, whether the substantial sexual conduct is accomplished by means of masturbation or oral copulation." *Id.*, at *12 (internal quotation marks and citations omitted). In one 1999 case, the California Supreme Court defined the same words in a different statute to include masturbation, defined as touching of the genitals of the victim or offender. *See id.* (citing *People v. Chambless*, 74 Cal. App. 4th 773 (1999)). Subsequent Court of Appeal cases built on that one to define masturbation to not necessarily require skin-to-skin contact. *Id.*, at *13 (collecting citations). And the court rejected Blake's arguments that legislative history and policy concerns showed otherwise. *Id.*, at *14–*15.

The California Supreme Court summarily denied review.

## IV. HABEAS PROCEEDINGS

Blake, represented by counsel, filed his original habeas petition in October 2019. Dkt. No. 1. I ordered the government to respond in March 2020. *See* Dkt. No. 7; 28 U.S.C. § 2243. In May 2020, after Blake filed a habeas petition in the California Supreme Court, I granted his motion to stay this case in favor of that proceeding. Dkt. No. 10. The California Supreme Court denied the habeas petition and I approved a new briefing schedule in September 2020. Dkt. No. 12. In January 2021, I granted respondent Rosemary Ndoh's motion to dismiss Blake's ex post facto claim because he had failed to exhaust it in state court. Dkt. No. 18. In March 2021, I granted his motion to stay the case so that he could present that issue in another habeas petition to the California Supreme Court. Dkt. No. 20. After the California Supreme Court summarily denied it, the parties agreed to a new briefing schedule. Dkt. No. 23. Blake filed his current operative petition in January 2022 and I permitted several more extensions, ending in a traverse

filed on July 21, 2022.

## LEGAL STANDARD

28 U.S.C. § 2254 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition under Section 2254 "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

AEDPA's "standard of 'contrary to, or involving an unreasonable application of, clearly established Federal law' is difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks, alterations, and citations omitted). The petitioner bears the burden of proof and the state-court decisions are entitled to the "benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

This standard "applies even where there has been a summary denial" by the state court. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011). "When . . . there is no reasoned state-court decision on the merits, the federal court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (internal quotation marks, citations, and alterations omitted).

## DISCUSSION

Blake's petition raises two challenges: ineffective assistance of counsel ("IAC") and denial

1  of procedural due process. I reject both.

2  **I.   INEFFECTIVE ASSISTANCE OF COUNSEL**

Blake first argues that he was denied effective assistance of counsel on the counts against Does 1, 2 and 4[1] by his counsel's failure to raise his ex post facto argument in the opening brief with the Court of Appeal (resulting in a finding of forfeiture by that court) and in his petition for review with the California Supreme Court.

The Sixth Amendment, applied to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const., amdt. XI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether counsel was constitutionally ineffective. Someone challenging a conviction must establish (1) deficient performance and (2) prejudice from that deficiency. *Premo v. Moore*, 562 U.S. 115, 121 (2011). The *Strickland* test applies to appellate counsel on a direct appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 399–400 (1985). This is a "high bar" and "[s]urmounting" it is "never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). To establish deficient performance, a habeas petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citation omitted). "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Id.* (internal quotation marks and citations omitted). On the prejudice prong, "a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citations omitted).

Here, as I explain below, the ex post facto argument that Blake says his counsel should

---

[1] Blake's amended petition at times did not reference all three Does. But his argument in the Court of Appeals and his traverse make clear he intended to include all three, and the opposition proceeded on that basis.

have raised is legally incorrect. Accordingly, he has not shown that his right to effective counsel was violated at least because he cannot show a reasonable probability that the outcome would have been different if his counsel had raised and maintained the argument throughout the appellate proceedings. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal . . . . [Petitioner] cannot sustain his claim for ineffective assistance of appellate counsel because the issues he raises are without merit.").

Blake's proposed argument, in a nutshell, is that the statute of limitations would have run on his offenses were it not for a later amendment that extended the statute for certain offenses; because his offense did not qualify under the previous law, he argues, it violated the Constitution's Ex Post Facto Clause. *See* Pet. 31–60. That Clause provides that "[n]o Bill of Attainder or ex post facto Law shall be passed" by the states. U.S. Const., art I, § 10, cl. 1.

Understanding the argument that Blake contends should have been made first requires understanding the evolution of the statute of limitations that applies to his offenses. At the times when Blake committed his offenses against Does 1, 2 and 4—from 1990 to 1999—the general statute of limitations for those offenses was six years from the commission of the offense. *See* Cal. Pen. Code § 800 (1984 rev.) (amended 2011). In 1993, the Legislature enacted an amendment in Penal Code § 803 that extended the statute for offenses involving children to include, among other things, an extension to the statute of limitations to one year after reporting to authorities if the offense involved "substantial sexual activity . . . excluding masturbation that is not mutual." 1996 Cal. Stats. ch. 130, § 1 (originally codified at Cal. Penal Code Ann. § 803(g)(3)(A) (West Supp. 2003)). In response to a U.S. Supreme Court decision invalidating certain applications of the statute (discussed in more detail momentarily), the Legislature reenacted it in 2005 to include this same extension (recodified in a neighboring subsection). *See* Cal. Pen Code § 803(f).

The key feature that dooms Blake's ex post facto argument is that the Legislature in 1993 extended the (then-six-year) statute of limitations *before* it had expired on Blake's offenses, even for his earliest potential offense in 1990. Blake relies entirely on the Supreme Court decision

8

alluded to earlier, *Stogner v. California*, 539 U.S. 607 (2003). *See* Pet. 31–60. In *Stogner*, the Court held that California's 1993 statutory extension of the limitations period was unconstitutional to the extent that it permitted *resurrection* of otherwise time-barred prosecutions when the extension was enacted *after* the preexisting limitations period expired. *Stogner*, 539 U.S. at 609, 620–21. The Court's holding was based entirely on that distinct combination of features—revival of time-barred claims by a change in the law outside of the statute of limitations. *See, id.* at 610–620 The Court was careful to circumscribe its holding only to that situation. *See id.* at 618 ("Even where courts have upheld extensions of *unexpired* statutes of limitations (extensions that our holding today does not affect), they have consistently distinguished situations where limitations periods have *expired*." (citations omitted)); *see, e.g.*, *id.* at 610 ("Do these features of the law, taken together, produce the kind of retroactivity that the Constitution forbids? We conclude that they do."); *id.* at 613 ("After (but not before) the original statute of limitations had expired . . . ."); *id.* at 616 ("[T]o resurrect a prosecution after the relevant statute of limitations has expired is to eliminate a currently existing conclusive presumption forbidding prosecution . . . ."); *id.* ("[N]umerous legislators, courts, and commentators have long believed it well settled that the Ex Post Facto Clause forbids resurrection of a time-barred prosecution."). It explicitly contrasted it with a situation in which the limitations period had not expired. *See id.* at 618. And all of the reasons the Court gave for concluding that this retroactive change violated the Ex Post Facto Clause apply only to that situation; none would apply to the present facts.

Even if this were not clear from *Stogner* itself, the Ninth Circuit has since made it clear when applying *Stogner* to the very statute Blake challenges in a situation just like this: "the critical element in [*Stogner*] was the fact that the amendment in question became effective after the statute of limitations had already expired . . . . Here, § 803(g) was enacted while the limitations periods were still running on the claims against Renderos. This is, therefore, precisely the type of statute that *Stogner* expressly stated it was not striking down." *Renderos v. Ryan*, 469 F.3d 788, 795 (9th Cir. 2006). Blake has not pointed to any case that held that extension of a statute of limitations during the limitations period violates the Ex Post Facto Clause. And every other district court decision of which I am aware has held that, in circumstances identical to Blake's (and unlike

9

*Stogner*'s), this statutory extension does not violate the Ex Post Facto Clause. *See, e.g.*, *Lockhart v. Hubbard*, No. EDCV 11-1343-DMG OP, 2012 WL 1835331, at *7 (C.D. Cal. Mar. 7, 2012), *report and recommendation adopted*, No. EDCV 11-1343-DMG OP, 2012 WL 1835329 (C.D. Cal. May 21, 2012); *Costella v. Clark*, No. C 08-1010 PJH, 2011 WL 940868, at *23 (N.D. Cal. Mar. 18, 2011), *aff'd*, No. 11-15896, 2013 WL 873623 (9th Cir. Mar. 11, 2013); *Sandoval v. Martel*, No. 2:07CV00004RSMJLW, 2010 WL 3075646, at *7 (E.D. Cal. Aug. 5, 2010); *Melchiorre v. Lamarque*, No. C05-01841 SI, 2006 WL 70137, at *5 (N.D. Cal. Jan. 10, 2006).

Blake makes one other bid to put this case in *Stogner*'s reach. He argues that no reasonable person would have understood "substantial sexual conduct" and "masturbation" in the statute of limitations extension law to have the meaning the Court of Appeal gave them in this case to make his offenses not time-barred. *See* Pet. 54–59. In other words, he argues that the interpretation of those terms departed so far from how a reasonable person would understand the statute that they effectively act as an ex post facto amendment. *See id*. The Court of Appeal's understanding of "masturbation," he points out, stemmed from a 2005 California Supreme Court decision, which is after the statute would have run on most of his offenses. *See id.* And the dictionary definition of masturbation, he says, would include only behavior for "sexual gratification," which some of Blake's was not (in his view). *See id.*

I reject this argument too. California's courts get to authoritatively interpret California law and alleged errors of state law are not cognizable on federal habeas. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857, 861 (9th Cir. 1997). Here, the Court of Appeal determined that Blake's conduct did fall within the statute. *See supra* Background, Section III. This was a unsurprising and proper interpretation of state law; Blake's attempt to transform it into an issue of the federal Ex Post Facto Clause is unconvincing. He points to no authority—from the Supreme Court or otherwise—that this sort of statutory interpretation can lead to an ex post facto violation. For clarity, I do not foreclose the possibility that, in an extraordinary case, state courts could render an interpretation of state law so extreme and unforeseeable that using it to revive dead claims could amount to an ex post facto law (reinterpreting "two years" to mean "three years" for instance). *Cf. Stogner*, 539 U.S. at 611

(discussing purposes of the Ex Post Facto Clause as including providing "fair warning"); *Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003) (explaining that state law does not constitute an independent and adequate ground barring federal review when it is subject to sufficiently inconsistent and unforeseeable judicial alteration). But even if this theory were viable, this would not be the case for it. As chronicled above, the Court of Appeal simply engaged in ordinary, reasonable statutory interpretation. *See supra* Background, Section III. It relied on decades of unbroken precedent interpreting this and identical statutory terms (including precent from 1992—long before the six-year statute would have run on any offenses). *See id.* It relied on numerous Court of Appeal decisions and a California Supreme Court decision. *See id.* Its interpretation was not some bolt from the blue, it flowed naturally from state law as it long stood. This was not an imposition of an ex post facto law under the guise of statutory interpretation.[2]

Accordingly, Blake's IAC-based claim for relief is denied.

## II. PROCEDURAL DUE PROCESS

Blake argues that he was denied procedural due process on counts 8 through 17 and 20 though 33 by the combination of vagueness in the charging document and inconsistencies in Doe 3's description of the offenses. *See* Pet. 60–68. As I explain, there are multiple and overlapping reasons that Blake's claim fails.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amdt. XIV, § 1. The Sixth Amendment, incorporated against the states by the Fourteenth, provides that "[t]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const., amdt. VI. "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge,

---

[2] Even if Blake's substantive ex post facto argument were correct and the Court of Appeal imposed an entirely unheralded meaning on the statute, I cannot say with sufficient certainty that a failure to frame the issue as a violation of the Ex Post Facto Clause on appeal fell below *Strickland*'s deferential standard: Blake points to no authority directly supporting his novel ex post facto theory, so the failure to raise this precise argument was not below the standard of professional competence. *See Richter*, 562 U.S. at 104.

11

if desired." *Cole v. State of Arkansas*, 333 U.S. 196, 201 (1948).

Here, Blake has not shown that the Court of Appeal's decision was contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court. The parties discuss the evidence that was and was not introduced at the preliminary hearing and at trial to determine whether the particular offenses were shown with sufficient clarity—an issue I discuss below. *Compare* Pet. 60–68, *with* Oppo. 20–26. But first, there is an even more fundamental reason that habeas relief is not warranted: Blake points to no Supreme Court cases, or a doctrine fairly and clearly derived from them, that are in tension with the state court decisions. That is fatal to his claim. *See, e.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) ("'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."); *Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) (essentially same). Because Blake cannot point to any Supreme Court precedent (or principles derived from it)—let alone show that it contradicts what the state courts held—he cannot meet his burden to show that the state courts' decisions were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (internal quotation marks and citation omitted).

To get around this lack of any clearly established federal law that was violated, Blake argues that the Court of Appeal (and presumably the California Supreme Court in summary decision) misapplied the due-process principles mandated by the California Supreme Court in *People v. Jones*, 51 Cal. 3d 294 (1990), *as modified* (Aug. 15, 1990). *See, e.g.*, Pet. 68 ("The *Jones* decision permits charges which are non-specific as to time and place; *it does not permit* charges which fail to describe the conduct which itself is claimed to be criminal. (emphasis added)); *id.* (arguing that the lack of specific evidence violated "the minimum notice standard adopted by *People v. Jones*"). But that case sets out *state-law* due process principles in "resident" child molester cases. Even if there were any error in the application of state-law due process requirements, it would not be a ground for relief in federal habeas proceedings. *Estelle*, 502 U.S. at 67.

1          Instead, Blake attempts to transmute *Jones* into federal law. He cites one Ninth Circuit
2   case and several district court cases that, he says, followed *Jones* for purposes of defining federal
3   due-process principles. First, Blake misreads those cases; they did not hold that the U.S.
4   Constitution requires what *Jones* requires. In *Brodit v. Cambra*, 350 F.3d 985 (9th Cir. 2003), the
5   Ninth Circuit explained that the California Court of Appeal applied *Jones*, but it did not hold or
6   imply that *Jones*'s requirements were federal constitutional requirements. Indeed, it rejected the
7   petitioner's federal due-process claim because "Petitioner cites no clearly established *United*
8   *States Supreme Court precedent*, and we are aware of none, that the California Court of Appeal
9   contradicted or unreasonably applied in this portion of the analysis." *Brodit*, 350 F.3d at 989
10  (emphasis added). The district court cases also did not hold that *Jones* set the metes and bounds of
11  federal constitutional requirements; all of them simply discussed the *Jones* standard and,
12  sometimes, held that it had been met. *See Flynn v. Paramo*, No. 2:14-CV-0909-CMK-P, 2018
13  WL 1638880, at *10 (E.D. Cal. Apr. 5, 2018); *Mendez v. Davey*, No. EDCV152496PSGJEM,
14  2017 WL 4277131, at *8 (C.D. Cal. Aug. 18, 2017), *report and recommendation adopted sub*
15  *nom. Ramirez Mendez v. Davey*, No. EDCV152496PSGJEM, 2017 WL 4279212 (C.D. Cal. Sept.
16  22, 2017); *Campos v. Trimble*, No. EDCV 11-1738-VBF JEM, 2012 WL 2365898, at *7 (C.D.
17  Cal. Apr. 16, 2012), *report and recommendation adopted*, No. EDCV 11-1738-VBF JEM, 2012
18  WL 2053851 (C.D. Cal. June 1, 2012); *Gonzales v. Evans*, No. CV 08-0820-AG JEM, 2011 WL
19  6813913, at *12 (C.D. Cal. Oct. 7, 2011), *report and recommendation adopted*, No. CV 08-0820-
20  AG JEM, 2011 WL 6813771 (C.D. Cal. Dec. 22, 2011). But even if they had done so, these
21  lower-court decisions would not establish that analysis as authoritative for federal-law purposes on
22  AEDPA review. *See* 28 U.S.C. § 2254(d) (restricting habeas relief to violation of "clearly
23  established Federal law, as determined by the Supreme Court of the United States"); *Cullen*, 563
24  U.S. at 182 (explaining that, under AEDPA, "State-court decisions are measured against this
25  Court's precedents").
26         To the extent that Blake's argument is that Doe 3's description of these offenses at the
27  various stages was too vague to provide "notice of the specific charge, and a chance to be heard in
28  a trial of the issues raised by that charge, if desired," *Cole*, 333 U.S. at 201, under federal law, he

"cites no clearly established United States Supreme Court precedent, and [I am] aware of none, that the California Court of Appeal contradicted or unreasonably applied in this portion of the analysis," *Brodit*, 350 F.3d at 989. Indeed, the only Supreme Court cases that Blake cites in this portion of his brief just establish the most general principles that criminal defendants must be made aware of the nature of the charges against them. That does not come close to making the requisite showing of error. *See Shoop*, 139 S. Ct. at 506; *Cullen*, 563 U.S. at 181.

Even assessing what occurred in Blake's case against the general constitutional principle that meaningful notice is required, Blake's argument comes up short. As an initial matter, that argument is analytically disjointed. Blake appears to challenge vagueness in the pleadings *and* at the preliminary hearing *and* at trial. Each of those raises distinct concerns. To the extent his argument is about pretrial procedures, the Court of Appeal held that Blake was procedurally foreclosed from challenging the alleged evidentiary errors at a preliminary hearing as a matter of state law because he failed to raise the issue at the time. *See COA Op.*, 2018 WL 1478242, at *20 (citing *People v. Pompa-Ortiz*, 27 Cal.3d 519, 530 (1980)). That state-law procedural bar constitutes an independent and adequate state-law ground of decision; such a ground bars federal habeas reexamination on the issue and Blake makes no counterargument on its adequacy. *Cf. Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011) (holding that application of the procedural contemporaneous objection rule constitutes an independent and adequate state-law ground of decision); *see also* Trav. 7–16 (not disputing adequacy of state-law ground). Indeed, Blake appears to retreat from the argument in his traverse. *See* Trav. 14 ("The state court of appeal noted that no pre-trial motion was made for lack of notice. Indeed, defects in the preliminary hearing are not cognizable on appeal if pre-trial lack of notice is cured by the trial itself. *This observation is accurate as far as it goes.* The difficulty in the present case is that *even at trial*, as to most counts, Doe 3 failed to describe the kind of act or acts committed or to describe which type of unlawful conduct corresponded to each allegation of the charging document." (emphasis added)).

That leaves alleged errors in the evidence at trial. But understanding this as a due process issue is odd; the usual rubric for whether the evidence at trial was enough to convict a defendant would be under a sufficiency-of-the-evidence standard. Perhaps Blake frames this as an issue of

14

due process because sufficiency-of-the-evidence review in habeas is heavily circumscribed by a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). It requires a federal court to conclude that the state court's determination that a rational jury could have found evidence of guilt was objectively unreasonable. *Id.* at 964–65. Blake makes no attempt to meet that demanding standard.

And even setting all this aside, Blake *was* given notice of the nature of the offenses alleged by Doe 3. Blake's argument is that "Doe 3 did not provide a specific act to correspond with each count of the charging document. Each charged act could have been any one from a number of acts described by Doe 3." Pet. 60. But he cites no authority that this level of specificity was needed to satisfy constitutional due process. To the contrary, the Court of Appeal reasonably understood *Jones* (on which Blake affirmatively relies) to say that it was not required. *COA Op.*, 2018 WL 1478242, at *20. Doe 3 testified at trial to (and gave preliminary testimony about) many more lewd and forceable lewd acts than Doe 3 was charged with. *See id.*, at *3–*6. He also described those acts in reasonable detail, such as separating out masturbation, oral copulation, etc. *See id.*, at *3–*4. Blake gave blanket denials of them all. Although Doe 3 did not (as many victims in resident child molester cases cannot, *see Jones*, 51 Cal. 3d at 299) line up each individual act with a particular time, Blake points to no authority that he needed to—and *Jones* points the other way. *See id.* at 305 ("A young victim such as Sammy, assertedly molested over a substantial period by a parent or other adult residing in his home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents."). The Court of Appeal reasonably held—and the California Supreme Court could have reasonably held—that Blake was on notice that he needed to defend himself against specified types of sexual acts against one particular person in specified time periods. *Cf. id.* at 316 ("[T]he victim specified the type of conduct involved (rape) and its frequency ('almost every night' for three months), and confirmed that such conduct occurred during the limitation period. Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases."); *Lara v. Madden*, No. EDCV 17-474-ODW (KS), 2017 WL 7938464, at *11 (C.D. Cal. Dec. 22, 2017), *report and recommendation adopted*, No. ED CV 17-0474 (KS), 2018 WL

1135636 (C.D. Cal. Feb. 26, 2018) (holding that similar allegations did not warrant habeas relief). That satisfied any notice requirement Blake advances and gave him a fair chance to defend himself at trial. He did so, and the jury found against him on most (but not all) of the counts.

## CONCLUSION

The application for a writ of habeas corpus is DENIED. Judgment will be entered accordingly.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). Blake has not made a substantial showing of the deprivation of a constitution right or that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Blake may seek a certificate of appealability from the Ninth Circuit.

**IT IS SO ORDERED.**

Dated: September 8, 2022



William H. Orrick
United States District Judge